## McALEER *v.* SCHNEIDER.

WILLS; TESTAMENTARY INTENT; LIFE ESTATE; AFTER-ACQUIRED PROPERTY.

1. In construing a will the meaning of the testatrix must be looked for in the provisions of the will itself. Declarations made to the witnesses with respect to her wishes and intentions are not admissible in explanation thereof.

2. Where a will gives a devisee "a piece of ground next to her lot at Mount Pleasant," and it appears that the testatrix owned at the time of making the will a small piece of ground next the devisee's lot at Mount Pleasant which was well known and perfectly certain of identification, the devise is not void for uncertainty.

3. A simple devise of land in this District, without any words of limitation or description of the extent of the interest devised, creates a life estate only.

4. A will speaks from its execution and not from the testator's death, unless, as provided by the act of Congress of January 17, 1887, (24 Stat., 366), "it shall appear that it was the intention of the testator to devise property acquired-after the execution of the will."

5. The construction given statutes allowing the devise of after-acquired property, is that the intention need not be declared in express words, but it will be sufficient if it can be reasonably made out in the will taken as a whole.

6. Where a testatrix devised a piece of real estate to her sister, and "all my belongings," and also provided in her will that such sister might give the testatrix's other sisters $100, "if she feels like making a present," it was *held* that such expressions did not sufficiently indicate an intention on the part of the testatrix to pass after-acquired property.

No. 249. Submitted January 19, 1894.—Decided February 21, 1894.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill for the sale of a decedent's real estate and the distribution of the proceeds. *Reversed.*

The COURT in its opinion stated the case as follows:

The bill herein was filed by Mary J. McAleer and Catherine Ann Joseph, two of the sisters of Columbia Kelly, deceased, against two other sisters, Sarah E. Schneider and Alice Eugenia Snyder, and T. F. Schneider, the administrator of the estate of Columbia Kelly, for the sale of a certain lot in the city of Washington belonging to the said estate, and the distribution of the proceeds thereof; the bill alleging that the lot is incapable of partition. The following facts were agreed upon by stipulation duly filed and signed:

" First. That Columbia Kelly died in the city of Washington, District of Columbia, on the 10th day of May, 1892, having left a last will and testament, which was admitted to probate June 17, 1892, in the office of the Register of Wills for the District of Columbia, and is in the words and figures following:

" ' Washington, August 15, 1890.

" ' I give to my sister Alice Eugenia Snyder, wife of W. F. Snyder, a house on 9th and Westminster St.—corner house, a piece of ground next to her lot at Mt. Pleasant, and all my belongings if she feels like making a present to Mrs. M. J. McAleer and Mrs. J. F. Joseph of $100.00 one hundred dollars she can do so—and a present of some kind to Mrs. G. C. Schneider.

" ' COLUMBIA KELLY.'

" Second. That the said Columbia Kelly owned at the date of her will and died seized of the south forty (40) feet front by the depth thereof of lot numbered one hundred and fifteen (115), in W. O. Denison and B. F. Leighton, trustees' subdivision of part of Mount Pleasant and Pleasant Plains, acquired by her by deed from Frederick A. Schmidt,

dated March 18, 1887, and recorded in Liber No. 1242, at folio 228 *et seq.*, one of the land records of the District of Columbia, and that this is the real estate mentioned and described in her will as 'a piece of ground next to her lot at Mt. Pleasant.'

"Third. That the said Columbia Kelly was also seized in her lifetime of a lot and house at the corner of Ninth and Westminster streets, northwest, in the city of Washington, and owned the same at the date of her said will, wherein the same is mentioned; that after the execution of her will she sold this lot and house and conveyed the same on the 18th day of May, 1891, to Robert Mason.

"Fourth. That the said Columbia Kelly on or about the 20th day of May, 1891, purchased lot numbered two hundred and forty-five (245), in square numbered one hundred and fifty-six (156), in the city of Washington, District of Columbia, from T. Franklin Schneider, and that if the complainants have any interest in said lot numbered two hundred and forty-five (245), in square numbered one hundred and fifty-six (156), in the city of Washington, D. C., which will entitle them to partition, the said lot is not susceptible of partition in kind, and a sale is necessary in order to make partition thereof among the several parties entitled.

"Fifth. That the said Columbia Kelly left surviving her as her next of kin and sole heirs at law Sarah E. Schneider, Mary Jane McAleer, Catherine Ann Joseph, and Alice Eugenia Snyder, who are named as complainants and defendants in the bill filed in this cause."

Over the objection of the complainants, the defendants were permitted to introduce the evidence of two witnesses to the effect that they had heard Miss Kelly say before and after her sale of the Westminster street house and purchase of the Q street house, she wished Mrs. Alice Eugenia Snyder to have all of her property or everything that she might leave behind. This evidence was considered by the trial justice. The bill was dismissed. Both complainants appealed, but Mary J. McAleer abandoned her appeal, and Catherine Ann Joseph prosecutes the same alone.

*Mr. J. J. Johnson* for the appellant:

When the construction of a will is involved in such obscurities and it is impossible for the court to decide in favor of the defendant without guessing at what the testatrix would have done under her altered circumstances the paramount right of the heir arises. The court has no right to risk a mistake in attempting to correct one. *Carroll* v. *Carroll et al.*, 16 How., 258; *Smith et al.* v. *Edrington*, 8 Cr., 66; *Girard* v. *Phila.*, 4 Rawle, 322, 338.

*Mr. J. H. Lichliter* for the appellees:

1. The will of the deceased is good and valid and sufficient for passing both real and personal estate. Its terms are as plain and simple as they could possibly be made, and the meaning and intention are clear and certain.

2. All the property, real and personal, owned by the testatrix at the date of the execution of the will, and of which she died seized and possessed, passes by the will to the devisee and legatee therein named.

3. Alice Eugenia Snyder, named as sole devisee and legatee in the will, takes all of the estate, real and personal, of which the testatrix died seized and possessed, including all property acquired after the execution of the will. 24 Stat., 361; *Girard* v. *City of Philadelphia*, 4 Rawle, 323.

A diligent research has failed to discover an adjudication of the word "belongings." Recourse for its meaning must therefore be had to the dictionary. In the new Century Dictionary, Vol. I., p. 518, the word is thus defined: "*Belonging*, n.—That which belongs to one; used generally, if not always, in the plural. . . . (b) Property, possessions."

Thus, it is a word of the largest and widest signification. It is in use among many persons and is applied in the sense of this wide definition to all that one owns or may own—all that belongs to him or that may belong to him—and meaning all his property or possessions.

The language of the will is: "I give * * * all my belongings." To the mind of the testatrix at the moment of

writing the will this was the language that would cover and convey all the worldly possessions that she would own at the time of her death, and which she has not before mentioned.

Thus, the word used by her has that large meaning of the words "property" and "possessions" which have been used in many wills, and have been construed by the courts in many cases. Jarman on Wills, marginal pp. 716-729; 2 Redfield on Wills, 126, margin; *Morris* v. *Henderson*, 37 Miss., 506; *Wait* v. *Belding*, 24 Pick., 136.

The will in this case was executed after the passage of the act of Congress above quoted. This act gives the *power* or *capacity* to make a devise of property acquired after the execution of a will. The power or capacity to make a devise being given, the question is as to the intention to do so in a particular case. It will be observed that the statute of the District of Columbia (24 Stat., 366) provides simply that the intention to devise after acquired property shall "appear," while in most of the States the statute say that the intention shall "clearly and manifestly appear" (Massachusetts and Ohio), "clearly appear" (New Hampshire and Tennessee), or be "clear and explicit" (Iowa).

The following cases are referred to as adjudications in the States under statutes similar to that involved in this case: *Winchester* v. *Forster*, 3 Cushing, 366, 371; *Cushing* v. *Aylwin*, 12 Metcalf, 169, 174-5; *Brimmer* v. *Sohier*, 1 Cushing, 118, 131-4; *Wait* v. *Belding*, 24 Pickering, 129; *Pray* v. *Waterston*, 12 Metcalf, 262; Beach on Law of Wills, sec. 85; *Dickerson's Appeal*, 55 Conn., 223; *Henderson* v. *Ryan*, 27 Texas, 673; *Hill* v. *Bacon*, 106 Mass., 578; *Canfield* v. *Bostwick*, 21 Conn., 553; *Liggatt* v. *Hart*, 23 Mo., 135; *Applegate* v. *Smith*, 31 Mo., 169; *Willis* v. *Watson*, 4 Scammon, 64; *Missionary Soc.* v. *Mead*, 131 Ill., 238; *Welborn* v. *Townsend*, 31 S. C., 408; *McClaskey* v. *Barr*, 54 F. R., 782; *Wynne's Lessee* v. *Wynne*, 32 Tenn., 413; ·*Loveren* v. *Lamprey*, 22 N. H., 434; *Briggs* v. *Briggs*, 69 Iowa, 617; *Walton* v. *Walton*, 7 J. J. Marsh, 58; *Paine*

v. *Forsaith*, 84 Me., 66; *Doe* v. *Wynne*, 23 Miss., 251; *Hardenberg* v. *Ray*, 33 F. R., 812; *Lent* v. *Lent*, 24 Hun., 436. An express declaration is not required in the will to pass after acquired land. *Brimmer* v. *Sohier*, 1 Cush., 132; *Briggs* v. *Briggs, supra; Doe* v. *Wynne, supra.* It is not the policy of the law to declare a partial intestacy, if the will can be so construed as to prevent it. *Welborn* v. *Townsend*, 31 S. C., 408; *Tayloe* v. *Mosher*, 29 Md., 450-1; *Marion* v. *Williams*, 9 Mackey, 20; *Given* v. *Hilton*, 95 U. S., 594; *Vernon* v. *Vernon*, 53 N. Y., 351; *Thomas* v. *Snyder*, 43 Hun., 15; *Delehanty* v. *Asylum*, 56 Hun., 57; Beach on Law of Wills, sec. 316; *Schuck* v. *Shook*, 10 N. Y. Sup., 936.

3. The will gives to the devisee named therein an estate in fee simple. The cardinal principle in the construction of a will is the intention of the testator; and this is the first and great object of inquiry, and it is to be collected from the whole will—to be gathered from " its four corners." Looking at the will in this case, what was the intention of the testatrix? Was it simply to give to to Alice Eugenia Snyder an estate for her life in the property, or was it to give the property to her absolutely and forever? Here the fact is to be regarded that this will was written by the testatrix with her own hand and without the benefit of counsel. The will makes a full and complete disposition of all the estate, property, and possessions of the deceased. This was her intention; and it was in view of her death and for this purpose that she made her will. See 4 Kent's Com., 535; *White* v. *Crenshaw*, 5 Mackey, 118; *Richardson* v. *Penicks*, 1 App. D. C., 261; *King* v. *Ackerman*, 2 Black, 408, 414-8; *Dougherty* v. *Monett's Lessee*, 5 G. & J., 461; *Chamberlain* v. *Owings*, 30 Md., 454; Hinkley's Testamentary Law, sec. 167; *Loveren* v. *Lamprey*, 22 N. H., 444; *Wait* v. *Belding*, 24 Pick., 129, 138; *Jackson* v. *Merrill*, 6 Johns., 190, 192; *Jackson* v. *Robins*, 16 Johns., 588; Beach on Law of Wills, secs. 188, 189; Boone on Real Property, sec. 331; 2 Redfield on Wills, 323, 326 margin; Sugden on Powers, 120;

*Hooper* v. *Hooper*, 9 Cushing, 129; *Allen* v. *White*, 97 Mass., 507.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This case turns upon the construction of the will. To its provisions alone must we look for the meaning of the testatrix. Her declarations made to the witnesses with respect to her wishes and intentions are not admissible in explanation, and cannot be considered. *Weatherhead's Lessee* v. *Baskerville*, 11 How., 357; *Wilkins* v. *Allen*, 18 How., 385.

2. The devise of the "piece of ground next to her lot at Mount Pleasant" is not void for uncertainty. It appears that the testatrix owned, at the time of making the will, a small piece of ground next the devisee's lot at Mount Pleasant, which was well known and perfectly certain of identification. The devise, however, created an estate for life only in Mrs. Snyder. A simple devise of land, by the law of this District, without any words of limitation or description of the extent of the interest devised, creates a life estate only. At the same time, to enlarge the estate into a fee does not require the use of technical terms or any particular form of words. Any words which will sufficiently show the intention of the testator to create more than a life estate will be given that effect, no matter what their form may be; and the whole will may be looked into in order to ascertain the meaning to be given to this particular part. It is true also that partial intestacy is not favored; but this is a rule of construction only which must yield to the superior rule of law.

The will in the case of *Richardson* v. *Penicks*, 1 App. D. C., 261, is a very different one from this, and taking its provisions as a whole, the court concluded that the testator's intention therein to create an estate in fee in the remainderman was sufficiently plain to authorize that construction.

3. The chief point of contention in this case is whether the devise to Mrs. Snyder passes to her the subsequently acquired lot on Q street. Here, again, the rule of law as

regards real estate is, that the will speaks from its execution instead of from the testator's death, unless, as prescribed in the act of Congress of January 17, 1887, "it shall appear that it was the intention of the testator to devise property acquired after the execution of the will." 24 Stat., 366.

The statutes generally of the States which have amended or changed the rule of the English law as it prevailed in England until the act of 1 Victoria, differ widely in their terms. Hence the cases arising under them must be considered with that in view. Some of these declare that the will must be held to convey all the real estate belonging to the testator at the time of his decease, unless it shall clearly appear by his will that he intended otherwise. Other statutes are more like the act of Congress mentioned, and some go so far as to require that the intention to pass after-acquired real estate must "clearly and manifestly appear," or be "clear and specific," and the like. The construction given this class of statutes, however, has been about the same, and of a very liberal nature. All agree that the intention need not be declared in express words, and that it will be sufficient if it can be reasonably made out in the will taken as a whole. *Wait* v. *Belding*, 24 Pick., 129; *Brimmer* v. *Sohier*, 1 Cush., 118; *Miss. Soc.* v. *Mead*, 131 Ill., 338; *Briggs* v. *Briggs*, 69 Iowa, 617; *Pruden* v. *Pruden*, 14 Ohio St., 253; *Paine* v. *Forsaith*, 84 Me., 66.

In some, if not all, of these cases it will be found that the wills themselves plainly showed the testator meant his after-acquired real estate to pass. In the Illinois case the court said the "conclusion is irresistible," and in that from Maine it was said "the whole will pulsates with the intention."

We can find no such intention in the words of this will. It is very short, but not too short for the testatrix to make a specific devise of the only real estate which she then owned and of all her "belongings." There is no residuary devise or bequest of all her property, or of what she might have left, and the like, as was the case in the wills construed in the majority of the cases above cited.

The words "and all my belongings," which conclude the sentence in which the devise to Mrs. Snyder is made, have been urged as showing this intention. It is contended that the word "belongings" is synonymous with property, which has generally been held to include real estate. We have not been able to find where this word has ever been given such effect. In the common vernacular, it seems to be used to convey the idea of personal property, goods and effects, and these in the restricted sense of such as are peculiarly attached to the person. It may well be held to have been used in this will as referring to all the personal property of the testatrix, and we so consider it; but we cannot stretch its meaning so as to cover not only real estate, but also after-acquired real estate. We do not mean to say that the word may not, under some circumstances, be held to embrace real estate; but to do so the intention to give it this extended signification should be clear.

Nor do we think that the suggestion of the second clause, to the effect that Mrs. Snyder may give the other sisters one hundred dollars "if she feels like making a present," is sufficient to show the intention of the testatrix to give to Mrs. Snyder all the residue of her estate of every kind then had or afterwards acquired. This suggestion is perfectly consistent with the bequest of all her "belongings," which, construed to embrace all her personal property and effects, amounted in value, as appears from the answer of Mrs. Snyder, to about nine hundred dollars.

In accordance with the foregoing views, *the decree appealed from must be reversed, with costs to the appellant, and the cause remanded for further proceedings not inconsistent with this opinion ; and it is so ordered.*