**In re Estate of Mary Inez STONE, also known as M. Inez Stone.**

**Amelia Frances CALDER, Appellant,**

v.

**Edmund D. CAMPBELL.**

No. 24931.

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1972.

Decided July 11, 1972.

Mr. Michael F. Curtin, Washington, D. C., for appellant.

Mr. Daniel Webster Coon, Washington, D. C., for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

In this case we are asked to decide whether interest earned from the investment of liquidated shares of stock inures

---

to the benefit of named specific legatees or becomes part of the general residuary estate. This is an appeal from a judgment of the United States District Court for the District of Columbia, overruling the objections of appellant, Amelia Frances Calder, the residuary legatee of the will of Mary Inez Stone, to the First and Final Account of Edmund D. Campbell, the executor of the estate and the named appellee in this action. We find that it was the intent of the testatrix that the stock of the corporation was to be distributed between the named specific legatees and any proceeds, including interest earned, resulting from the sale of the stock should also be distributed to the named specific legatees.

Mary Inez Stone died February 21, 1969, owning 1,998 out of a total of 2,000 shares of Stone's Mercantile Agency Inc. (hereinafter, the corporation).

The will stated that the executor was to pay administration expenses out of the proceeds from the sale of said stock.[1] Appellee, by exercising his powers as executor of the estate, liquidated all of the stock of the corporation in order to satisfy the expenses of administration and specific bequests made in the will. Between February 28, 1969 and May 13, 1970, appellee liquidated the entire block of stock of the corporation. Varying amounts realized from the liquidation of the corporation were properly invested by appellee during this period. The income generated from these investments was $8,822.98, which appellee distributed to those named as specific legatees in Item THIRD of the will. Objections to this distribution and to the First and Final Account of the executor were filed by appellant.

1. The pertinent items of the will of Mary Inez Stone are:

SECOND: I direct my executor to satisfy all estate, inheritance, legacy and succession taxes, including Federal and District of Columbia estate taxes, and all funeral and administration expenses, with the proceeds obtained from the redemption of a sufficient amount of the stock of Stone's Mercantile Agency, Inc. which I own at the time of my death, pursuant to Section 303 of the Internal Revenue Code of 1954 and the agreement between myself and the said Stone's Mercantile Agency, Inc. Said stock is to be used for such purposes notwithstanding the fact that there may be other assets in my estate at the time of my death which by law or rule of court would otherwise be used to satisfy said obligations.

THIRD: I give and bequeath all of the corporate stock of Stone's Mercantile Agency, Inc., a corporation organized and existing under the laws of the Commonwealth of Virginia, owned by me at the time of my death (less so much of said stock which is redeemed by Stone's Mercantile Agency, Inc. in accordance with my wishes as set forth in Paragraph SECOND, of this my will) including any dividends, cash or stock declared prior to my death and not paid until after my death, to the persons hereinafter named, and in the proportions hereinafter prescribed carried out to the nearest whole number of shares;

to have and to hold the same in their own respective rights individually and absolutely as follows:

| | |
|---|---|
| Gordon H. Fletcher | 25% |
| Donald C. Tracy | 14% |
| Elmer S. Ford | 13% |
| Samuel J. Sherman | 9.5% |
| Albert J. Moreland | 8.5% |
| Bernard S. Lewis | 8.5% |
| Coleman C. Batcheller, Jr. | 8.5% |
| Albert O. Stearns | 8.5% |
| Mrs. Nellie L. Ford | 4.5% |

In the event any of the said persons named above as beneficiaries of the said bequest of stock shall not be living at the time of my death or, if then living, be not then actively employed by Stone's Mercantile Agency, Inc., then the distributive share of stock which said person would otherwise have received shall instead be paid over and distributed to the said corporation.

SEVENTH: All the rest, residue and remainder of my estate whether real, personal or mixed and wheresoever situate or being, whether now owed or hereafter acquired by me, or over which I have or at the time of my death may have the power of appointment, and all property which may become a part of the residuum of my estate by reason of the failure (for any reason) of any of the bequests hereinbefore set forth, shall be reduced to cash by my executor and when so reduced, I give, devise and bequeath said cash to my niece, AMELIA FRANCES CALDER.

Appellant contended that the testatrix intended only a portion of the stock was to pass to the specific legatees and once the stock was reduced to cash that it became part of the overall estate to which appellant would be entitled as the residuary legatee. These objections were overruled by the District Court. We affirm that decision.

■ The burning question on appeal goes to the intent of the testatrix when she executed her will. The cases are legion which state that "[i]t is a basic principle of probate law that a court should effectuate the wish of the testator. . . ." Berryman v. Riggs National Bank of Washington, D. C., 131 U.S.App.D.C. 42, 43, 401 F.2d 993, 994 (1968). Additionally in Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700 (1938), cert. denied sub. nom., Smith v. Ockerhausen, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034 (1939), the court said "[t]his will must be interpreted so as to effectuate the true intent of the testator as expressed in the will. This is the primary and basic rule to which all others must yield."

This court in Stone v. Stokes, 82 U.S. App.D.C. 299, 303, 163 F.2d 704, 708 (1947), quoting Covenhoven v. Shuler, 2 Paige, N.Y., 122, 130, 21 Am.Dec. 73 stated that:

". . . The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together, and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. . . ."[2]

■ Testatrix made it clear that out of the proceeds derived from the sale of the corporate stock that the remainder of the proceeds were to go to those named specific legatees who were still employed by the corporation at the time of her death. Benefits which were derived from prudent investment of this stock accrued to the named specific legatees of the stock. Therefore, it is immaterial whether there was a partial liquidation or a complete liquidation of the corporation. The proceeds from the sale of the stock were to go to the named specific legatees. A reading of the entire will of Mary Inez Stone is sufficient to establish her intent to distribute the proceeds from the sale of the corporate stock to those named as specific legatees and not to appellant, the residuary legatee.

Therefore, the income of $8,822.98 which was earned by investment of the proceeds of the sale of the corporate stock was properly distributed to the named specific legatees in the will. As we stated in In Re Estate of Glover (Glover v. Taylor), No. 71–1074, —— U. S.App.D.C. ——, 463 F.2d 1238 (1972) quoting Baker v. National Savings and Trust Co., 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950):

Too frequently "the intent of the testator" is treated as a legal abstraction, or as the deduction most agreeable to trained legal minds. It is neither. The intent of a testator is what the testator had in mind.

The judgment of the district court is Affirmed.

2. *See also,* Smith v. Bell, 31 U.S. (6 Pet.) 68, 74, 8 L.Ed. 322 (1832) ; In Re Estate of Glover (Glover v. Taylor), No. 71–1074, 150 U.S.App.D.C. ——, 463 F.2d 1238 (1972) ; Riggs National Bank of Washington, D.C. v. Summerlin, 144 U.S. App.D.C. 131, 135, 445 F.2d 201, 205, cert. denied sub. nom., Kelchner v. Summerlin, 404 U.S. 851, 92 S.Ct. 91, 30 L. Ed.2d 91 (1971) ; In re Estate of Symonds, 138 U.S.App.D.C. 15, 17, 424 F.2d 928, 930 (1970) ; Hall v. Killingsworth, 102 U.S.App.D.C. 307, 308, 253 F.2d 43, 44 (1958) ; Brinker v. Humphries, 90 U. S.App.D.C. 180, 182, 194 F.2d 350, 352 (1952) ; Hilton v. Kinsey, 88 U.S.App. D.C. 14, 17, 185 F.2d 885, 888 (1950) ; Pyne v. Pyne, 81 U.S.App.D.C. 11, 14, 154 F.2d 297, 300 (1946) ; Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700 (1938), cert. denied sub. nom., Smith v. Ockerhausen, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034 (1939) ; Walker v. Thomas, 64 App.D.C. 148, 149– 150, 75 F.2d 667, 668–669 (1935).